## UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re:   Jerry Campora Jr.<br>          Petitioner | )<br>) | |
| | ) | CASE NO. 14-70330 |
| | ) | |
| | ) | Chapter 13 |
| Address: 1 Market Path | ) | |
|          Setauket, New York 11733 | ) | |

## OBJECTION TO HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2, PROOF OF CLAIM # 1

1. This is Notice to this court, to all officers of this court, to the United States trustee, to all trustees and to all parties in interest that Petitioner Objects to the Proof of Claim #1 entered by HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2

2. The Form B-10 filed by Lisa Singer, authorized agent for HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass-Through certificates, Series 2004-2 into case number 14-70330 is an unsupported and improper claim; HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 is not the holder in due course of the original genuine wet ink signature promissory note (the basis of it's claim) and therefore lacks standing to bring any proof of claim in this case.

3. Evidence of the proceeding statements if found in the fact that Lisa Singer of Rosicki, Rosicki, & Associates, P.C. are the entity where "payments and notices are to be sent".

4. There is no evidence of a nexus between Lisa Singer of Rosicki, Rosicki, & Associates, P.C. and purported "creditor" HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2.

5. Yet again, another sham claim is made with no evidentiary support.

6. HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 and its agents are prosecuting

1

a claim that is unsubstantiated, as required under 11 USC §502 and in willful disregard of the bankruptcy rules.

7.  After notice and opportunity Homestar Mortgage Services, LLC and EverHome Mortgage, have failed/refused to respond to a RESPA Qualified Written Request (QWR) REQUEST FOR ACCOUNTABILITY, VERIFICATION OF DEBT sent via USPS first class mail, for an audit per Fair Debt Collection Practices Act, 15 USC 1692G Section 908(b) of all official documents that would establish validity of this debt, received on March 26, 2009 via Certified Mail # 7006 3450 0003 9342 4280, as is its duty under Federal Law. See footnote 181 p. 37 Exhibit A.

    http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1027961


8.  EverHome Mortgage who has limited Power of Attorney to act on behalf of HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 and Homestar Mortgage Services,LLC had 60 business days per Federal Law 12 USC Sec. 2605(e) to fully comply with said RESPA QWR and failed/refused to do so.

9.  After 20 days had elapsed whereby both Homestar Mortgage Services, LLC and Everhome Mortgage(who has limited Power of Attorney to act on behalf of HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 ), Jerry Campora, Jr. sent out a follow-up letter giving both parties additional time and opportunity to comply with aforsaid request. Once again Defendant did not receive any response from either party, which was a second dishonor.

10. Had HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 complied with said QWR and produced the Pooling and Servicing Agreements (PSA) and a verified chain of custody of the original genuine wet ink signature promissory note sworn to under penalty of perjury, the evidence would reveal HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 is not the holder in due course of said note as is the basis of its claim.

11. By its own admission, Homestar Mortgage Services,LLC and EverHome Mortgage (who has limited Power of Attorney to act on behalf of HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2) has willfully failed to comply with the Real Estate Settlement and Procedures Act as is its duty under the law. A motion to compel and order to show cause from this court should persuade HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 to comply with the law.

12. Homestar Mortgage Services,LLC and EverHome Mortgage(who has limited Power of Attorney to act on behalf of HSBC BANK USA, National Association as Trustee for

2

Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2) 's failure to provide substantiated and bonafide proof of claim, and public record evidence of HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2's default are prima facie proof that HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 has admitted and agreed to all charges, including fraud, misrepresentation, and other crimes against Jerry Campora, Jr., and have waived and abandoned all claims against the property at1 Market Path, Setauket, New York 11733.

13. Jerry Campora Jr., petitioner and defendant, has disputed via sworn affidavit the putative obligation to HOME STAR MORTGAGE (now "HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR HOMESTAR 2004-2,") facts are in dispute.  HOME STAR MORTGAGE, putative "Trustee" (to which HSBC BANK USA, N.A. is putative successor trustee), was required under the FDCPA, 15 USC 1692g(a), to obtain verification of the debt, but failed to do so.

14. That the evidence shows that the Respondents Irene M. Dorner, President HSBC Bank USA, NA, Fein, Such, and Crane, LLP, Richard A. Gerbino, Michael S. Hanusek, and Monica G. Christie, Esq., named in Jerry Campora Junior's administrative remedy "Notice Of Conditional Acceptance Pending Proof Of Claim, and Notice Of Counterfeit Security And Other Violations Of Federal Law, and Statement Of Facts" and True Bill, were duly served by service of process of said Notice via Certified Mail numbers 7009 2820 0001 6357 3007(Dorner & HSBC), 7009 2820 0001 6357 3014(FEIN SUCH & CRANE,LLP), 7009 2820 0001 6357 2987 (Gerbino), 7009 2820 0001 6357 2994 (Hanusek), 7009 2820 0001 6357 2970 (Christie) On the 21st day of October, 2010; Respondents were given notice to respond within three days and to acknowledge liability pursuant to 12 U.S.C. §1813 for the subject note/instrument deposited by HOMESTAR MORTGAGE SERVICES, LLC in the amount of $525,000.00, or else to rebut the statements of fact; failure to respond and to rebut was their tacit agreement to pay the True Bill in the amount of $1,575,000.00 (treble) damages. Notice to Principal was/is Notice to Agent.

15. On the 22nd day of November, 2010 a Notice of Fault with Opportunity to Cure and Second True Bill was served upon respondents via certified mail numbers 7009 2820 001 4986 8806 (Dorner & HSBC), 7009 2820 0001 4986 8813 (FEIN SUCH & CRANE, LLP), 7009 2820 0001 4986 8820 (Richard A. Gerbino), 7009 2820 0001 4985 2812 (Michael S. Hanusek), 7009 2820 0001 4986 8837 (Monica G. Christie), thereby establishing an effective service/delivery date for M. Dorner, President HSBC Bank USA, NA, Fein, Such, and Crane, LLP, its senior officers and its attorneys, Richard A. Gerbino, Michael S. Hanusek, and Monica G. Christie, Esq., of November 25th, 2010.

16. That On the 20th day of December, 2010 a Notice of Default and Third True Bill was served upon respondents via Certified Mail #s 7009 3410 0001 1853 9960 (Irene M. Dorner & HSBC BANK), 7009 3410 0001 853 9977 (FEIN SUCH & CRANE, LLP), 7009 3410 0001

3

1853 9984 (Richard A. Gerbino), 7009 3410 0001 1853 9991 (Michael S. Hanusek), 7009 3410 0001 1854 0003 (Monica G. Christie).

17. That no response to any of the above notices is evidenced by U.S. MAIL or any other private carrier.

18. The allegedly "verified" complaint filed by Monica G. Christie of FEIN SUCH & CRANE, LLP on October 28, 2009, included a fraudulent assignment that was forged by Bethany Hood dated October 19, 2009, signed one week prior to the Verified Complaint being filed.

19. That the Respondents, Irene M. Dorner, President HSBC Bank USA, NA, Fein, Such, and Crane, LLP, Richard A. Gerbino, Michael S. Hanusek, and Monica G. Christie, Esq., and all agents, are now in DEFAULT without recourse and are found in agreement and harmony with the Declarant, Jerry Campora Junior in his "Notice Of Conditional Acceptance Pending Proof Of Claim, and Notice Of Counterfeit Security And Other Violations of Federal Law, and Statement of Facts;" which terms instructed Respondents to "rebut that with which you disagree, in writing, with particularity on a point by point basis to the notary listed above, within 3 days of your receipt of this letter, and support your disagreement with evidence, fact and law. Your failure to respond, as stipulated, is your agreement with and admission to the fact that everything in this letter is true, correct, legal, lawful, and is your irrevocable agreement attesting to this, fully binding upon you, in any court in America, without your protest or objection or that of those who represent you or of those whom you are representing."

20. A copy of a Note signed on the day of the closing is NOT a Certified Copy of the current Original note. Passing off a copy of an Unregistered Security as if it were the original is Counterfeiting, and possession of contraband. Despite repeated demands by Jerry Campora Jr. to return the original Note in exchange for payment tendered and HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2's subsequent default on June 2010, by its silence/default, HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 has admitted it does NOT have the Note. If Plaintiff had the note, it would have produced said note two years ago, when it brought this case as per CPLR 3101.

21. Petitioner moves the court to expunge Proof of Claim #1 entered by Lisa Singer as agent for HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 for failure to provide the court with substantiated, validated, and authenticated evidence to rebut the public record evidence, and to support Proof of Claim with a true bill in commerce detailing the alleged amount due and owing to HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 and to provide evidence that HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 is the holder in due course with standing to make such a claim.

4

HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 has 30 days from receipt of this Objection to Proof of Claim to respond.

22. It may not be common knowledge to courts, including bankruptcy courts, but it should be, that there is rampant fraud being committed by alleged lenders in foreclosure cases and bankruptcy Proofs of Claim.

23. U.S. District Court Judge David D. Dowd Jr. in Ohio's northern district chastised CHASE Bank National Trust Co. and Argent Mortgage Securities Inc. in October 2007 for what he called their "cavalier approach" and "take my word for it" attitude toward proving ownership of the mortgage note in a foreclosure case.

24. Federal District Judge Christopher Boyko dismissed 14 foreclosure cases in Cleveland in November 2007 due to the inability of the trustee and the servicer to prove ownership of the mortgages.

25. Similar cases were dismissed during the past year by judges in California, Massachusetts, Kansas and New York.

26. The attached Exhibit A Research Paper-Misbehavior and Mistake in Bankruptcy Mortgage Claims by Univ. of Iowa College of Law Professor Kathleen M. Porter reveals the rampant fraud being committed by "lenders" and servicers after compiling data from 1700 recent Chapter 13 Bankruptcy cases.

27. She concludes "mortgage companies frequently do not comply with applicable law. A majority of mortgage claims are missing one or more of the required pieces of documentation for a bankruptcy claim. Furthermore, fees are often poorly identified, making it impossible to verify if such charges are legally permissible or accurate."

28. Ms. Porter also states "Despite these irregularities, mortgage claims in bankruptcy are infrequently contested. Imposing unambiguous legal rules does not ensure that a system will actually function to safeguard the rights of parties. The findings of this Article are a chilling reminder of the limits of formal law to protect consumers. Observing that laws can underperform has crucial implications for designing legal systems that will function as intended and for evaluating the appropriate scope of consumer protection."

29. The proof of claim entered by Lisa Singer is prima facie evidence of the fraud exposed by Ms. Porter in her report.

30. Per UCC § 1-206. Presumptions. Whenever [the Uniform Commercial Code] creates a "presumption" with respect to a fact, or provides that a fact is "presumed," the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.

31. Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389 (Bkrtcy.D.N.J.1994), "Under the New Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest in which must be perfected by possession ..." Unequivocally the Court's rule is that in order to prove the "instrument", possession is mandatory.

32. As an attorney, Lisa Singer should know that the Proof of Claim she entered into this case failed to comply with Federal Rules of Bankruptcy Procedure 3001 that imposes 2 evidentiary requirements on proofs of claim: a copy of the writing if one evidences the claim; and evidence of perfection if the creditor asserts a security interest in the property of the debtor. Pursuant to FRBP Rule 9011 HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2's claim lacks any evidentiary support.

33. Further, HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 states in its own proof of claim that it is merely a servicer for HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 and not the holder in due course of alleged mortgage or note therefore HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 has no standing to bring forward any Proof of Claim.

34. Since HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2, by its own admission is merely a servicer, not a holder in due course, and not a real party in interest; it has suffered no injury, and has no "constitutional" standing to even submit a proof of claim.

35. Unless Lisa Singer is willing to swear under penalty of perjury (meaning-I'm willing to go to jail if I'm lying) that she is a competent first hand fact witness, with personal knowledge, and will state the exact date, time, and location where she personally witnessed the existence of the original, genuine wet ink signature promissory note allegedly signed by Jerry Campora, Jr, in possession of HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2; has personally verified and substantiated (as is her duty as an officer of the court) that there is an amount due and owing under the note and there is an "actual arrearage", then the alleged Proof of Claim Lisa Singer entered into this case is a fraud, and was entered as an attempt to swindle Petitioner out of her home with no legal authority to do so.

36. The alleged creditor has failed to substantiate, and validate the alleged mortgage arrearage after notice and opportunity to do so on multiple occasions. The alleged creditor has failed to produce a chain of custody of the original genuine promissory note, and the pooling and servicing agreement (as is it's duty under RESPA) that would provide clear evidence as to how HSBC BANK USA, National Association as Trustee for Homestar Mortgage

Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 came into possession of said note.

37. With regard to said securitization of said Note, Defendant employed the services of Neil F. Garfield, Esq., of LUMINAQ, an expert with knowledge, training and experience in the field of securities, the securities industry, derivative securities, securities of debt, securities regulation, special purpose vehicles, structured investment vehicles, pooling of assets for issuance of asset backed securities, issuance and sale of asset backed securities and specifically mortgage backed securities by special purpose vehicle in which an entity is named (Frequently as a trust by a trustee for the holders of certificates or non-certificated interests in mortgage backed securities), the economics of securitized residential mortgages, the securitization of mortgage loans, accounting, generally accepted accounting principles, and Financial Accounting Standards in the context of said securitizations, the Internal Revenue Code as it applies to REMIC vehicles and pooling and servicing of securitized loans, audits of notes and related matters. On page 4 of the Securitization Research Commentary , Mr. Garfield writes: Remember that the securitization documents represent a CLAIM of ownership and are not evidence that such ownership actually exists. To the contrary, it appears from recent testimony from witnesses produced by Home Star Mortgage and other large would-be foreclosures all over the country that the loans were never properly executed, documented, transferred or recorded. Thus the "lender of record" is subject to a challenge in a Quiet Title action simply on the basis of lack of consideration or payment in full, since the money that funded your loan came from third parties and would therefore be classified as a table-funded loan under the Federal Truth in Lending Act. If the property is already subject to a foreclosure process or claim, there is a high probability that a claim for Slander of Title would be appropriate.

38. Neil F. Garfield, Esq. explains why the putative "loan" is not in default:
Generally in securitizations, the servicers are required and obligated to make advances of principal and interest in order to maintain a regular flow of funds to investors. In nearly all cases, except where credit lines are exhausted, the servicers are advancing principal and interest monthly on any loan where the payments are not received from the homeowners. The main exception to this is for interest only loans. The servicers are advancing only interest in these cases. Regardless, the homeowners payments are being made to the trustee and on to the certificateholders (who are the investors). While the advance mechanism is woven into the very fabric of the Prospectus Supplement and the Pooling and Servicing Agreement, the underlying issue is the same. The receipt of payment by the trustee and/or the certificateholders of the payment by or on behalf of a homeowner extinguishes the obligation to make that payment. In other words, once the payment is made or advanced, no additional payment is due. The note specifies who is obligated under the instrument (usually but not always in section #9). Any party who acts as a guaranty or surety is obligated the same as the borrower.

39. In HSBC BANK USA, N.A. AS TRUSTEE FOR HOMESTAR 2004-2's original complaint alleged on page 3 paragraph eight, that default had occurred due to Defendants failure to "pay portions of principal, interest or taxes..." However, default is established not upon

borrower's failure to pay, but, upon whether the proper parties, in this case, the trustee and the certificateholders, have been paid.

40. Loan Level Accounting report and commentary from Neil F. Garfield, Esq.) shows, among other things, to whom payments were being made, the status being reported to the investors or the trust, and any other activity involving money that is reported between the servicer and the "trustee." This information frequently reveals (as it does in this instant case) that while the homeowner has received a notice of default … the distribution (payment on the loan) is continuing (through payment by the servicer, per UCC 3-602 as shown below) and being reported as performing. The Loan Level search consists of public information that includes documents:

    a. Homestar Mortgage Acceptance Corp 2004-2, Accounting from Monthly Certificate holder Statements- Public information showing the status of your loan while in REO, bankruptcy or foreclosure) Normally when shown, this shows that amortized balance. This report shows the Current Actual balance of the loan NOT in default.

    b. Homestar Mortgage Acceptance Corp 2004-2 Advances- Public information shows that the servicer(s) and trustee are required and obligated to make payments under the obligation whether or not they receive payments from the homeowner.

    c. Homestar Mortgage Acceptance Corp 2004-2 Aggregate Advances- Public information shows that the servicer(s) are actually making advances (in aggregate)

    d. Homestar Mortgage Acceptance Corp 2004-2 Loan Level Accounting for Campora- Public information shows that the loan is being paid as agreed. Principal and interest are current. All documents and reports of this evidence of fraud and forgery and other Federal Crimes, although voluminous, remain in the possession of petitioner Jerry Campora, Jr and are *prima facie* evidence.

41. Claimant HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 through its attorney, has violated Petitioner's due process rights by proceeding with a foreclosure action and violating state and Federal Laws including RESPA and TILA.

42. Petitioner Notices this court that Judge Robert D. Drain in the United States Bankruptcy Court for the Southern District of New York issued an Order expunging the Proof of Claim of PHH Mortgage in Case # 09-22261 RDD for failure of PHH Mortgage to validate and substantiate it's Proof of Claim. (Exhibit B & Exhibit C)

43. Petitioner Notices this court of the discovery of more case law supporting Petitioner's contention that the entire Proof of Claim must be investigated, *ab initio*. See *Veal v. AHMSI and Wells Fargo*, 450 B.R. 897 (9Cir 2011)(Exhibit D)

44. Per 11 USC Sec 502(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that

after Petitioner objects after notice and hearing the bankruptcy court must determine the amount owed in lawful currency.

45. The Petitioner notices this court, Lisa Singer and trustee Nancy Spencer Grigsby that the attached Exhibit A in support of Petitioner's objection was funded by the National Conference of Bankruptcy Judge's Endowment for Education.

46. One would think that if the Petitioner (a Financial consultant by profession), who is not an attorney, and has little knowledge of how the bankruptcy courts function other than basic research, can find the attached research report, then daily practitioners in bankruptcy law (trustees and attorneys) with a duty to stay current on the issues affecting their profession and maintaining the integrity of the courts, would have read this report as well.

47. The evidence obviously points to the contrary, so Petitioner has included some excerpts from Exhibit A for the benefit of the court.

48. Petitioner encourages both Ms. Derosa and Lisa Singer to thoroughly review not only the excerpts, but the entire report, and to investigate mortgage proofs of claim (as is their duty) after now being fully informed of the rampant abuse of mortgage servicers.

49. "Misbehavior or mistake by mortgage servicers can have grave consequences. Undocumented or bloated claims jeopardize a family's ability to save its home. Beyond bankruptcy, poor or abusive mortgage servicing undermines America's homeownership policies by exposing families to risks of overpaying or unjustified foreclosures. This Article's findings offer an empirical measure of whether consumers can trust mortgage companies to adhere to applicable laws."

50. "Similarly, trustees have a statutory obligation to object to improper claims, yet rarely do so." (per 11 USC Sec 704 (a)(5)).

51. "...mortgage companies often disobey the law and that the legal system does not substantiate the amounts that lenders assert that consumers owe. These problems can cripple a family's efforts to save its home and undermine policies of sustainable homeownership."

52. "Yet, no objection was filed in response to 96% of all claims, despite these problems."

53. "...youth of mortgage servicing as an industry means that few attorneys or judges understand the legal and factual issues."

54. "Another court reduced a mortgagee's claim under the equitable theory of recoupment after finding that the servicer violated the Real Estate Settlement Procedures Act in failing to respond to the debtor's requests for an account balance."

55. "Bankruptcy courts have repeatedly expressed frustration with mortgagees' failure to provide complete and accurate information."

56. "These problems led a prominent Chapter 13 trustee to conclude that mortgage servicing in bankruptcy is in a 'sorry state.'"

57. "These courts have emphasized two main harms: damage to the judicial process when a court is asked to rule on incorrect or baseless facts and a danger that a family would lose its home without just cause and in violation of the Bankruptcy Code."

58. "Servicing problems also jeopardize the ability of courts and trustees to administer bankruptcy cases correctly and fairly"

59. "The data show that nearly one in five mortgagees ignores a clear disclosure rule when they participate in a bankruptcy case. With much less evidence of misbehavior by debtors."

60. "This pattern of noncompliance undermines the purpose of the proof of claim rules and effectively shifts the burden to debtors or trustees to verify the accuracy of claims."

61. "These problems suggest that the bankruptcy system may be harboring mortgage servicing abuse, rather than functioning as a system to protect homeowners from impermissible charges."

62. "Despite unambiguous federal rules designed to protect homeowners and to ensure the integrity of the bankruptcy process, mortgage companies frequently fail to comply with the laws that govern bankruptcy claims"

63. "These findings are important because they offer a rare glimpse into the high-stakes world of mortgage servicing"

64. "In fact, servicers have a financial incentive to impose additional fees on consumers; ...servicers often are permitted to retain all, or part, of any default fees, such as late charges, that consumers pay;...a borrower's default can boost a servicer's profits; Servicers have incentives to make it difficult for consumers to cure defaults."

65. "If bankruptcy claims contain illegal fees, debtors face increased burdens in confirming repayment plans and are forced to find extra income to make bloated payments."

66. "If servicing abuse is routine, an additional harm is to our collective confidence in the integrity of the bankruptcy system and the power of law to balance the rights of consumers and businesses."

67. "While the case law is growing, there are still relatively few adjudicated decisions on mortgage servicing problems"

68. "Consumers may not be aware of their rights or be able to afford an attorney."

69. "..Consumers..may also have trouble identifying an attorney who is familiar with such issues...the attorney may find it difficult to obtain the cooperation of the mortgage servicer.."

70. "In Jones v. Wells Fargo Home Mortgage, the court identified a variety of accounting errors and impermissible behavior by a mortgage company, including miscalculations of both prepetition and post-petition obligations and attempts to collect impermissible fees."

71. "The participation of the U.S. Trustee program in the litigation was hotly contested, but undoubtedly changed the character of the litigation to focus on whether servicers engage in a pattern of misconduct, an issue usually relevant to crafting an appropriate sanction for misbehavior."

72. "Some courts also have targeted the creditors' law firms for misbehavior; Another court has observed 'instances in which attorneys representing alleged mortgagees or their servicing agents did not know whether the client was a mortgagee or a servicing agent, or how their client came to acquire its role.' In addition, several class-action lawsuits have been filed based on allegedly inappropriate efforts to collect attorneys' fees in bankruptcy."

73. "Yet, creditors are rarely called to task for these behaviors. The vast majority of all claims (96%) pass undisturbed through the bankruptcy system without objection. Attorneys do not aggressively enforce their clients' rights against mortgage companies because the costs are too high and the incentives are too low in the current system."

74. "The combination of widespread deficiencies in claims and the lack of objections weakens the integrity of the bankruptcy process..."

75. "The documentation requirements for mortgage proofs of claim are unambiguous and long-standing. Nevertheless, these laws were not consistently respected..."

76. "The result is a system that does not ensure that even obvious mistakes or overcharges in claims will be reviewed and objections filed, if appropriate."

77. "Some "itemizations" contain so little detail as to be a perversion of the proof of claim form's use..."

78. "By obscuring the information needed to determine the alleged basis for the charges, servicers thwart effective review of mortgage claims."

79. "Inside or outside of bankruptcy, the law does not appear to be functioning as intended to ensure that creditors must satisfy the evidentiary burden..."

80. "To weigh the viability of Chapter 13...debtors and their attorneys need a fairly accurate estimate of the amount of the outstanding arrearage"

81. "On an aggregate basis, the disagreements between debtors and mortgagees are a multi-billion dollar problem."

82. "...mortgage creditors are rarely called to task for the widespread deficiencies in their claims; ...objections were filed in response to only 4% of all claims."

83. "Debtors, trustees, and other creditors simply do not object to mortgagees' claims—even when such claims do not meet the standard for prima facie validity because the claims did not comply with the unambiguous requirements of Rule 3001. Even such claims contained vague or suspicious fees"

84. "Chapter 13 trustees typically focused on procedural problems with claims. The trustees' most frequent basis for objection was simply that a claim was a duplicate of a previously filed claim."

85. "The formal objection process for deficient or incorrect claims is largely dormant. The written law that governs claims does not appear in reality to translate into a functional check on mortgage servicing abuse."

86. "While Congress has emphasized the importance of a reliable bankruptcy system that garners the public's trust, creditors face no meaningful consequences when they disregard the law and this public policy and submit incomplete or unsubstantiated claims for judicial approval."

87. "Yet, the paucity of objections shows a collective failure of the system to identify even patently defective claims."

88. "Verifying that debtors only pay amounts to which creditors are legally entitled should be a routine part of bankruptcy representation."

89. "The current system fails to offer sufficient incentives to encourage attorneys and trustees to obtain the additional information necessary to ensure that the amounts paid to mortgagees are correct."

90. "..the current system suggests that creditors can operate with the knowledge that their claims will not be reviewed or challenged."

91. "The current claims process is malfunctioning."

92. "While the rules themselves use mandatory language, phrased in terms of 'shall,' the reality is that some creditors treat them as aspirations—or ignore them entirely. In most instances, there is no negative consequence to the mortgagee from its failure to attach the required documentation."

12

93. "The Bankruptcy Code already states that a trustee shall 'if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper.' Many trustees apparently believe that no purpose would be served by objecting to claims without the documentation required by law. For example, while notes were missing from forty percent of claims, trustees filed only one or two objections that raised that issue."

94. "The U.S. Trustee Program could mandate mortgage claims review as an official duty of panel and standing trustees in their program handbook, and trustees could be evaluated, in part, on their fulfillment of this duty."

95. "In 2007, the U.S. Trustee took a step in this direction by becoming involved in litigation over alleged wrongdoing by mortgage servicers."

96. "A core function of Chapter 13 bankruptcy is helping families save their homes; The debtor's ability to pay mortgage arrearages, as a practical matter, determines the success of a case."

97. "..show how bankruptcy can be the locus for identifying a variety of illegal lending activity."

98. "In late 2007, two federal courts in Ohio dismissed dozens of foreclosure lawsuits on standing grounds because the plaintiffs could not prove they were the record owner of the mortgage and note."

99. "Two class action lawsuits are pending that allege that consumers pay bloated, illegal fees for default charges."

100. "Mortgage servicers are increasingly being fingered as the primary party who is frustrating homeowners' efforts to obtain modifications of unaffordable loans."

101. "...a review of the Truth-in-Lending disclosure can give rise to a claim for actual or statutory damages, or even rescission of the loan under some circumstances."

102. In conclusion, until validation and substantiation of the alleged debt owed to HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 can be determined by this court, petitioner will be irreparably harmed if this case is dismissed.

103.    FEIN SUCH & CRANE, LLC as agent for HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass-Through certificates, Series 2004-2 has attempted to illegally foreclose on a note allegedly in possession of claimant and Petitioner believes should the automatic stay be lifted, FEIN SUCH & CRANE, LLC will proceed with this illegal foreclosure in an attempt to violate Petitioner's due process rights and steal Petitioner's home.

104.    On June 4th, 2013, New York State Attorney General Eric T. Schneiderman filed a lawsuit against HSBC Bank USA and HSBC Mortgage Corporation (USA) for failing to follow state law related to foreclosure actions, putting homeowners at greater risk of losing their homes. Jerry Campora Jr. is currently in communication with both the NYS Attorney General and Inspector Generals office regarding this specific situation.


Per FRBP Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers

(b) Representations to the court.

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

(c) Sanctions.


If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

WHEREFORE, Petitioner requests HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2's Proof of Claim be expunged for failure of HSBC BANK USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass- Through certificates, Series 2004-2 to prove it is the holder in due course or the owner of the alleged debt instrument and for failure substantiate its proof of claim.

14

Dated: Setauket, New York
    March 3rd, 2014

Respectfully submitted,

Jerry Campora Jr.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document filed in Case No. 14-70330 in the United States Bankruptcy Court Eastern District of New York, with exhibits was mailed via certified, return receipt mail, postage paid on or about this _3rd_ day of __March__ , 2014 to the following recipients:

Mariane Derosa                                    Certified Mail # 7012 1640 0001 7915 8918
Standing Chapter 13 Trustee                            Return Receipt Requested
115 Eileen Way, suite 105
Syosset, NY 11791


*and via first class mail to:*

Lisa Singer, alleged Authorized Agent              Certified Mail # 7012 1640 0001 7915 8901
Rosicki, Rosicki, & Associates, P.C.                   Return Receipt Requested
51 E. Bethpage Road
Plainview, NY 11803



I declare under penalty of perjury under the laws of the United States of America that the foregoing statement is true and correct to the best of my knowledge.

Executed this _3rd_ day of _____March_____ 2014, at  Suffolk County, New York.

Jerry Campora Jr.