UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
IN RE:

                                          Chapter 13

JERRY CAMPORA, JR. ,                       Case No.: 14-70330-AST

---------------------------------------------------------X

### DECISION AND ORDER STRIKING DEBTOR'S NOTICE OF TIMELY SATISFACTION, DENYING DEBTOR'S CLAIM OBJECTION, ASSESSING SANCTIONS, AND DISMISSING DEBTOR'S CASE WITH PREJUDICE

The Debtor in this chapter 13 case, Jerry Campora, Jr. ("Debtor"), operates in disbelief of and disregard for the sanctity and propriety of court proceedings. He has exhibited disrespectful conduct before this Court, acted as if he himself is a court and/or judge of his own court, failed to comply with his obligations as a chapter 13 debtor, and unnecessarily multiplied the proceedings before this and other courts. For the reasons to follow, and as stated on the record on June 30, 2014, this Court has determined that Debtor should be sanctioned for raising claims without color of law and acting in bad faith, and/or for acting in bad faith, vexatiously, wantonly, or for oppressive reasons, by (1) making intentionally false representations to the Court, (2) attempting to mislead this Court by representing a fabricated "judgment" to be a judgment of a state court, and (3) blatantly disrespecting the Court and the judicial process. This Court has further determined that Debtor's "notice of timely satisfaction" should be stricken, his objection to a mortgage holder's claim should be overruled, and his chapter 13 case should be dismissed with prejudice to refiling under any chapter of the Bankruptcy Code for a period of one (1) year.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (B), (K) and (O) and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made

effective *nunc pro tunc* as of June 23, 2011.  The following constitutes the Court's findings of fact and conclusions of law made in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  FED R. BANKR. P. 7052.  This written decision memorializes and amplifies the oral ruling that the Court made after the close of evidence at the hearing held on this matter on June 30, 2014 and modifies the oral ruling where indicated below.

## Background and Procedural History

Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on January 28, 2014 (the "Petition Date").  Thereafter, Marianne Derosa was duly appointed and qualified as the chapter 13 trustee (the "Trustee").

On March 7, 2014, Debtor filed schedules indicating his monthly income to be $6,270.[1] [dkt item 19]

On March 12, 2014, HSBC Bank USA, NA as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass-Through Certificates, Series 2004-2 (hereinafter "HSBC") filed a secured proof of claim in the amount of $630,130.04, docketed as claim number 3, of which $221,864.70 represents prepetition arrearages and other charges (the "HSBC Claim"). The HSBC Claim states that HSBC holds a debt secured by a first mortgage on Debtor's real property located at One Market Path, Setauket, New York, 11733 (the "Property").

On March 17, 2014, Bank of America, NA ("BOA") filed a secured proof of claim in the amount of $100,423.25, docketed as claim number 4, of which $2,201.44 represents prepetition

---

[1] In his Chapter 13 Statement of Current Monthly Income, Debtor calculates his monthly income as $6,270. It appears that Debtor also intended to make expense deductions in the amount of $1,194, but neglected to subtract these expenses from the $6,270 amount. Accordingly, Debtor's monthly disposable income is calculated in the range between $6,270 and $5,076, which excludes the mortgage payments he is not making. Debtor also listed accounts receivables of $46 million, a $513,000 promissory note, and $26 million in potential claims against HSBC;  Debtor filed an amended Schedule B increasing the dollar amounts of these alleged assets [dkt item 31]; the Court has not considered these items as assets for purposes of calculating sanctions.

arrearages and other charges (the "BOA Claim"). The BOA claim states BOA holds a debt secured by a second mortgage on the Property.

On March 21, 2014, Debtor filed a proposed Chapter 13 Plan (the "Plan"). [dkt item 23] The Plan provides for an overlapping payment schedule as follows:

- $51.00 commencing April 10, 2014 though and including April 9, 2019;
- $63.66 commencing April 10, 2014 through and including April 9, 2019;
- $75.00 commencing April 10, 2014 through and including April 9, 2019.

Paragraph 2 of the Plan states that "Debtor knows of NO secured liens." Plan, ¶ 2. The Plan references two separate state court cases involving HSBC and states that HSBC is a disputed mortgage holder and holder of a "void" judgment. Further, paragraph 4 of the Plan, under the heading of "MORTGAGE LIENS TO BE AVOIDED," states that Debtor intends to avoid a mortgage lien on the Property in the amount of $583,000.00 pursuant to 11 U.S.C. § 544(a)(3), despite the Plan also providing that, to Debtor's knowledge, there are no secured liens. The Plan further provides, in pertinent part, "[t]he Debtor requests the bankruptcy trustee to use the trustee's strong arm powers under 11 U.S.C. § 544(a)(3), or, else abandon [sic] estate to allow debtor to file an Adversary Proceeding." Plan, ¶ 4.

On April 4, 2014, the Trustee filed a motion to dismiss this case pursuant to 11 U.S.C. § 1307(c) for cause based upon various material statutory defects in the Plan, including the failure to cure mortgage arrears under 11 U.S.C. § 1325(a), and Debtor's failure, *inter alia*, to commence making plan payments and comply with his disclosure obligations required under the Local Bankruptcy Rules. (the "Trustee's Dismissal Motion"). [dkt item 24]

On April 17, 2014, HSBC filed an objection to confirmation of Debtor's Plan based upon Debtor's failure to cure the arrears identified in the HSBC Claim. [dkt item 25]

On April 30, 2014, HSBC filed a motion seeking relief from the automatic stay to continue a foreclosure action against Debtor and the Property (the "HSBC Motion").  [dkt item 27]  In its Motion, HSBC alleges that it has physical possession of an original note signed by Debtor and a mortgage pledging the Property as security for that note, and that Debtor had not made a payment on the note since February 2014.

On May 1, 2014, Debtor filed an application for an order directing HSBC and BOA to show cause on an emergency basis why they should not, among other things, surrender the original notes evidencing their liens; the Court construed this to be an objection to HSBC's and BOA's claims (the "Claim Objection")[2].  [dkt item 28]  The Court denied Debtor's request for a hearing on an emergency basis, but scheduled a hearing on Debtor's Claim Objection for July 10, 2014.  Also on May 1, Debtor filed opposition to the Trustee's Dismissal Motion.  [dkt item 29]

On May 2, 2014, HSBC filed an affirmation in support of the Trustee's Dismissal Motion and an amended objection to confirmation of Debtor's Plan.  [dkt items 30, 32]  Therein, HSBC reiterated its prior objections to confirmation and alleged that Debtor had filed this case on the eve of a scheduled foreclosure sale and had not proposed his Plan in good faith.  Significantly, attached to HSBC's papers is a judgment of foreclosure and sale entered on October 1, 2013 before the Suffolk County Supreme Court (the "State Court"), Index No. 43034/09, styled as HSBC versus Debtor and others (the "Foreclosure Judgment").  [dkt item 30, Ex. B]  The Foreclosure Judgment, *inter alia*, authorizes the Property to be sold at a foreclosure sale to satisfy a debt owed to HSBC, at that time in the amount of $583,942.95 and secured by the

---

[2] On March 3, 2014, Debtor filed an objection to the HSBC claim [dkt item 18]. On April 17, 2014, Debtor filed an objection to the BOA Claim [dkt item 26].  Neither objection was properly filed or noticed for a hearing in accordance with either the Bankruptcy Rules, Local Bankruptcy Rules, or the Court's published procedures. While replete with procedural defects, this Court has nevertheless reviewed and considered Debtor's objections.

Property.  The Foreclosure Judgment is signed by Hon. Joseph Farneti as Acting Supreme Court Justice.

On May 6, 2014, Debtor filed an amended plan (the "Amended Plan").  [dkt item 34] This amended plan, *inter alia*, proposes overlapping payments of $51.00 for sixty (60) months, $63.66 for sixty (60) months, and $75.00 for sixty (60) months, again all covering the same sixty (60) month period,  April 10, 2014 through March 9, 2019.  The Amended Plan also states:

> Debtor knows of NO secured liens. HSBC BANK USA, as Trustee (disputed mortgage holder) obtained a VOID judgment in case number 09/43034 in 2010 (order to vacate on the record in case# 12/06874); HSBC BANK USA failed to surrender the note/funds/ security due Jerry Campora Junior as required pursuant to 12 U.S.C. §1813, prior to entry of judgment in case number 09/43034 in 2010 and for the last four years has continued to refuse to surrender the subject note/security/funds.

Amended Plan, ¶ 2.  The Amended Plan also contains the same provision as the original Plan for actions to be commenced by the Trustee for the avoidance of the HSBC and BOA liens under § 544(a)(3).

In conjunction with the filing of his Amended Plan, Debtor filed numerous additional pleadings which appear to relate to his Claim Objection[3] and which appear to be based on various disjointed and irrelevant theories cobbled together from various statutes and court decisions.

***The May 8 Hearing***

On May 8, 2014, this Court held a hearing ("May 8 Hearing") on, *inter alia*, the Trustee's Dismissal Motion.  In response to the Court's inquiries and the arguments of the other parties

---

[3] *See* Debtor's motions for Judicial Notice [dkt items 35, 36], Motion to Strike HSBC's Objection Confirmation of Petitioner's Chapter 13 Plan/Mandatory Judicial Notice [dkt item 37], and Notice and Request for Adjournment [dkt item 39].  These motions were not properly filed or noticed for hearing in accordance with the Bankruptcy Rules, Local Bankruptcy Rules, or the Court's published procedures. The Court has nevertheless reviewed and considered these pleadings.

present, Debtor made several outbursts and was warned repeatedly to stop interrupting the Court, HSBC's counsel and the Trustee.

As to the legal substance of the matters then before the Court, the Trustee argued that Debtor's Amended Plan had not remedied several of the material statutory defects set forth in her Dismissal Motion, and that Debtor still had not complied with several of his disclosure obligations.  As to the possibility of Debtor being able to confirm a plan in this case, the Court questioned Debtor about the Foreclosure Judgment, which had been described in Debtor's Amended Plan and various of Debtor's other pleadings as "void"[4].  In response, Debtor affirmatively represented to this Court that the Foreclosure Judgment had been vacated.  In particular, the Court had the following dialogue with Debtor, which is memorialized by the May 8 hearing transcript [dkt item 40]:

> THE COURT: Mr. Campora, I am looking at a judgment of foreclosure and sale--
> MR. CAMPORA: Okay. And we'll --
> THE COURT: -- entered October of 2013 by the state court in Suffolk County.
>
> [May 8 Hearing Tr. at 9:24-25, 10:1-3]
>
> *  *  *
>
> THE COURT: They have a judgment from a court of competent jurisdiction of Suffolk County, New York. It's in favor of HSBC Bank. That's who is here supporting dismissal of your case. So, if that judgment is void or voidable or defective or there's some reason that you --
> MR. CAMPORA: It's been established in the state court that it's void.
>
> [May 8 Hearing Tr. at 11:2-8]
>
> *  *  *
>
> THE COURT: […] You have an order from a state court setting the HSBC judgment aside, vacating the judgment?
> MR. CAMPORA: From the state court? There is a judgment filed in case number 12-06874 vacates that void order, vacates the void order in that case.
> THE COURT: Do you have that, Ms. Dunleavy?
> MS. DUNLEAVY: No, I do not, Your Honor.

---

[4] *See* docket items 19, 28, 29, and 37.

THE COURT: Do you have a copy of it, Mr. Campora?

MR. CAMPORA: Also, by the way, --

THE COURT: Do you have a copy of it?

MR. CAMPORA: I don't have it with me, but I will bring it in with me --

THE COURT: Is it filed with your papers?

MR. CAMPORA: It's filed in 12-06874, and it's docketed as one of the notice of motions.

THE COURT: Did you file it with this Court as an attachment to any of your papers here?

MR. CAMPORA: No, not as of yet, no.

MS. DUNLEAVY: Well, would you mind directing, in the event this case does get moved forward, docketing that so I could examine that?

MR. CAMPORA: And I will be happy to have that at our next meeting. I'll show you that, and I will show you the fact that this motion to dismiss -- it should not be heard. I've already objected to the --

THE COURT: What is the case number?

MR. CAMPORA: 12-06874. I am the plaintiff in a collateral attack case against HSBC and 14 other defendants.

THE COURT: And you have a copy of an order that's been entered by a state court voiding the judgment in favor of HSBC with a foreclosure action?

MR. CAMPORA: I have a copy -- I mean, an original of a judgment that states that, yes. That's the answer to the question is yes, that I will bring to our next meeting here.

[May 8 Hearing Tr. 11:15-25, 12:1-25, 13:1]

This Court then gave Debtor ten (10) days to file the judgment he represented to be in his

favor, and stated how such a judgment could impact this Court's ruling on dismissal of his case:

THE COURT: Mr. Campora, you've got ten days to file with this Court a certified copy of the judgment that you stated you have entered in case 12-06874 setting aside the HSBC judgment of foreclosure and sale. If you file that judgment and upon inspection by the Court, then I'll set an adjourned hearing date for today's motion to dismiss. If you don't have it, I will, for cause, enter an order of dismissal of your case.

[May 8 Hearing Tr. 15:11-18]

* * *

THE COURT: The plan that you have proposed is not confirmable on its face. It doesn't purport to pay any secured claims. So, under the technical defects of it, your plan, if you have secured debt, isn't confirmable. If you don't have a valid order of the state court setting aside the HSBC foreclosure, which you've already

told me isn't attached in any of the numerous papers you filed with this Court --
but, if you have it, file a certified copy with the Court --
MR. CAMPORA: That's also --
THE COURT: And that will influence this Court's ruling on the motion to
dismiss. If you don't have it, I'll enter an order of dismissal of your case for the
reasons that I've outlined. All right. I'm going to adjourn today's hearing sine die
based upon the bench ruling requiring filing of the order from the state court.
And, as I said, if it's there, it's there, and we'll analyze it, and I'll restore these
matters to calendar. If it's not there, the case will be dismissed.
MR. CAMPORA: Well, I already know that it's there. So it's -- you know, I
already know it's there. So we will have that for you probably in, like, yesterday I
could have it to you.

[May 8 Hearing Tr. 17:5-25]

### *Debtor's Written Allegations of a Judgment Voiding the Foreclosure Judgment*

On May 16, 2014, Debtor filed his "Notice of Timely Satisfaction of Request by Judge

Trust" (the "Notice")[5]. [dkt item 43]  The Notice, which is filed in affidavit form, contains a

number of scandalous allegations, in apparent violation of Bankruptcy Rule 7012, incorporating

Rule 12(f) of the Federal Rules of Civil Procedure.  By way of example, Debtor alleges that a

Judge Mark Cohen "in concert with attorneys for plaintiff, HSBC, … did threaten by extortionate

means to sell affiant's home by theft, forgery…."  Notice ¶ 12.  In addition, Debtor alleges that

"Judges Mark Cohen, Melvyn Tanenbaum and Joseph Farneti have each admitted via tacit

procuration, to perjuring their oaths of office…"  Notice ¶ 13.

Debtor states that a certified copy of a judgment vacating the Foreclosure Judgment is

attached to the Notice, and goes on to state the following in his sworn affidavit:

22.  Affiant filed a collateral attack, case # 12-06874, of the void judgment in
March of 2012, Michael Hanusek, Esq. and the attorneys of Fein, Such & Crane,
filed frivolous papers opposing vacation of the void judgment.

---

[5] On May 16, 2014, Debtor also filed a motion to compel HSBC to produce and surrender its note and a related
memorandum of law which this Court construed as pleadings in further support of his Claim Objection [dkt items
41, 42] These pleadings also were not properly filed and noticed under the Bankruptcy Rules, Local Rules, and the
Court's published procedures, but were nevertheless reviewed and considered by the Court.

23. On September 6, 2012, case #12-06874, court entered an order vacating the void judgment in case #09-43034, (see Exhibit "A" attached), due to the lower court's lack of jurisdiction and its loss of jurisdiction and due to HSBC's failure to surrender the original note; due to its failure to rebut any of Affiant's affidavits, and due to its bringing a fraud upon the court in case #09-43034.

24. On November 1, 2012, court in case #12/ 06874 entered a 2nd Writ of Error impeaching ALL OTHER ADDITIONAL ORDERS, including all implied orders, issued under the heading of "SHORT FORM ORDER" which "orders" allege to "find" . SEE EXHIBIT D, annexed herewith)

Notice, ¶¶ 22-25. (errors in original)

Debtor attached to his Notice two sets of documents made to appear as if they are lawful orders or judgments of the State Court in an action styled as 12/06874 (the "Collateral Attack Case"). The first is a paper denominated "Judgment" and made to appear as if it was entered by the State Court by, *inter alia*, (1) being emblazoned "SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF SUFFOLK", (2) use of the word "JUDGMENT" on the first page, (3) use of a stamp that states "ENTERED IN COMPUTER"; and (4) what is portrayed on page 19 as being signed on September 5, 2012 by "THE COURT", along with a "SEAL of the COURT"; this seal while barely legible, bears the word Seal and the name of Debtor. This "judgment" is signed by "Jerry Campora, Junior, Attornatus Privatus," purportedly as a judge of the State Court. This "judgment" purports to, *inter alia*, award Debtor $513,000.00 in damages against HSBC, rescind the note and mortgage Debtor originally executed in favor of HSBC, and permanently enjoin HSBC from foreclosing against the Property. Significantly, this "judgment" is accompanied by a certification from the State Court clerk's office that it is a true and correct copy of a judgment entered on October 11, 2012 in the State Court.

Debtor also attached to his Notice a so-called "Writ of Error", portrayed to have been "Entered by HON. JOSEPH FARNETI", and which has "Supreme Court of the State of New York, County of Suffolk" emblazoned across the first page. This paper is dated November 1,

2012, is signed for "THE COURT" on page 14 by Debtor as "Attornatus Privatus," and again makes reference to a seal; however, this seal is not included.  It is difficult to ascertain what relief Debtor sought to accord himself through this "Writ."

### The HSBC Response

On May 28, 2014, HSBC docketed a letter stating that no order vacating the Foreclosure Judgment exists, and attaches what purports to be the minutes of the Collateral Attack Case and several orders entered by the State Court therein (the "HSBC Letter").  [dkt item 45]  The HSBC Letter includes a purported order of the State Court, dated September 21, 2012 which, *inter alia*, denies all relief sought in the Collateral Attack Case by Debtor, and notes that Debtor has "conjured up an alternative legal universe in which he is the sovereign and the courts merely exist as ministerial bodies to do his bidding."  The HSBC Letter also includes another purported order of the State Court, dated February 15, 2013, deeming certain papers filed by Debtor as a "nullity," enjoining Debtor from filing any further motions, applications, or papers in that action without leave of court, and directing the clerk of court not to accept any additional papers from him.

### This Court's Order to Show Cause

Based on this Court's review of the parties' submissions, the papers attached to Debtor's Notice and the Orders attached to the HSBC Letter could not have all been entered by the State Court.  As a result, on May 30, 2014, this Court issued its Order to Show Cause Why This Court Should Not Strike Debtor's Notice of Timely Satisfaction, and Why Debtor Should Not Be Sanctioned ("OSC").  [dkt item 48]  This Court specifically gave Debtor notice as follows:

> Debtor represented to this Court, both through his sworn affidavit in the Notice and on the record of the May 8 Hearing, that the Supreme Court of Suffolk County had entered a judgment in his favor voiding the Foreclosure Judgment. The pleadings now before this Court call those representations into serious

question. Debtor's good faith in filing and prosecuting this case are also called into serious question when considered along with Debtor's other pleadings before this Court, including his Plan and Amended Plan.

OSC, pages 8-9.  Debtor was directed to appear on June 30, 2014 at 10:00 a.m. (the "Show Cause Hearing") and show cause "why this Court should not strike his Notice and why he should not be sanctioned for acting in bad faith, vexatiously, wantonly, or for oppressive reasons and attempting to mislead this Court," as well as to "show cause why this Court should not dismiss this bankruptcy case with prejudice for a period of two (2) years for cause, in accordance with 11 U.S.C. §§ 105(a), 349 and 1307(c), and/or why this case should not be converted to chapter 7 for cause, in accordance with 11 U.S.C. § 1307(c)."  OSC, page 10.  Contemporaneous with issuing the OSC, this Court issued a scheduling order for the conduct of the Show Cause Hearing[6] and which also scheduled a hearing for the same date and time on the Claim Objection and HSBC's motion for stay relief.  [dkt item 50]

### Debtor's Response to This Court's Order to Show Cause

Debtor filed over 500 pages of exhibits in connection with the Show Cause Hearing [dkt item 55], virtually all of which were irrelevant to his affirmative representation to this Court that the Foreclosure Judgment had been vacated.  He included a lengthy affidavit, in which he referred to his "judgment" vacating the Foreclosure Judgment as a "Judgment of the Court of Record," and as a "judgment lawfully rendered by the Court of Record."  [dkt item 55, ¶¶ 43-44]

### The Show Cause Hearing

At the Show Cause Hearing, the Court admitted exhibits from HSBC and certain exhibits from Debtor; Debtor was afforded an opportunity to present argument, but elected not to do so. [June 30 Hearing Tr. 14:1-7; 18:19-20]  When questioned by the Court regarding the validity of

---

[6] The scheduling order provided that the Court would not be considering any objections to the BOA Claim at that juncture and would only address Debtor's objection to the HSBC Claim. Therefore, the Court did not and based on this ruling need not reach BOA's response to Debtor's Claim Objection [dkt items 46, 47].

Debtor's "judgment", Debtor again defended his position that his "judgment" was a lawful judgment. [June 30 Hearing Tr. 17:16-18:17]  When asked what court entered his "judgment," he said "The People's Court."  However, Debtor could not explain why he made the papers he drafted and signed look as if they had been entered by the State Court, rather than by his People's Court.  Debtor also failed to explain his conduct in attempting to make his papers look as if they were part of the official records of the Collateral Attack Case by attaching a copy of a Clerk of the Suffolk Court's attestation.  Needless to say, Debtor's papers are not official papers of the State Court.

Moreover, Debtor continued to exhibit disrespect for the Court and the parties who appeared at the Show Cause Hearing.  As he had at the May 8 Hearing, Debtor repeatedly interrupted the Court throughout the Show Cause Hearing.  Debtor also continuously objected to opposing counsel's arguments, even objecting before counsel began to speak.  Debtor refused to stand when addressing the Court, despite several reminders to do so, and disrespectfully asked the Court inappropriate questions, such as "Why don't you ask me what you don't understand?" [June 30 Hearing Tr. 8:17-18] and "Did you read my papers up to date?" [June 30 Hearing Tr. 9:11-12, 9:20].  Debtor even objected to the Court's rulings while they were being made.  [June 30 Hearing Tr. 8:8, 11:4]  The Court had reprimanded Debtor at the Show Cause Hearing for his improper court room conduct, and reminded Debtor that respect and decorum are required of all participants in proceedings before this and all other courts.

After the close of evidence, the Court issued its ruling on the record.  For the reasons more fully stated on the record, the Court determined that HSBC's motion for stay relief should be granted, that Debtor's case should be prejudicially dismissed for a period of one year, Debtor's Notice should be stricken, the HSBC Claim should be allowed, and Debtor should be

sanctioned[7].  The Court assessed sanctions in the amount of $10,000 in addition to awarding

HSBC its attorney's fees incurred in connection with its stay relief motion and the show cause

proceedings.  At the conclusion of its ruling, the Court directed HSBC to file an affidavit setting

forth its attorney's fees within fourteen (14) days and, once filed, gave Debtor fourteen (14) days

to file an objection thereto.

On July 3, 2014, HSBC filed an affirmation setting forth its attorney's fees and expenses

it incurred in this matter in the total amount of $4,755.30.  [dkt item 58]  The same day, the

Court entered an Order granting HSBC relief from the automatic stay.[8]  [dkt item 59]

On July 16, 2014, Debtor filed opposition to HSBC's fee statement in which he argued

several matters irrelevant to the reasonableness of HSBC's counsel's fees.  [dkt item 64]

### Debtor's Bad Faith Conduct Before This Court was a Continuation of his Inappropriate Prepetition Conduct Before the State Court

Based upon the record made at the Show Cause Hearing, Debtor's conduct before this

Court was, in many respects, a continuation of his litigious and inappropriate conduct before the

State Court.  In an actual Order entered by the State Court in the Collateral Attack Case dated

September 21, 2012, the State Court dismissed all of Debtor's claims on the theories of *res*

*judicata*, collateral estoppel and failure to state a cause of action.  The State Court went on to

address Debtor's own rulings on these same motions.  It stated, "Campora has evidently conjured

up an alternative legal universe in which he is the sovereign and the courts merely exist as

---

[7] At the Show Cause hearing, the Court stated that Debtor should be held in contempt based on his conduct at that hearing and for the matters outlined above. Upon further review, the Court will not hold Debtor in contempt, or sanction him for contempt, but rather will sanction Debtor under its inherent authority to do so.

[8] Although not impactive on this Court's ruling, this Court notes that on August 6, 2014, Debtor filed and served on the undersigned a request for production of documents [dkt item 76] and for admissions [dkt item 77]; these "discovery requests" appear to relate to Debtor's appeal of this Court's July 3, 2014 Order granting HSBC stay relief.  On September 5, 2014, the undersigned filed a letter declining to respond to these requests and outlining the Federal Judiciary's disclosure regulations.  [dkt item 79]

ministerial bodies to do his bidding. This Court will not countenance any such conduct by Campora in the future." [dkt item 56]

Debtor's litigious conduct before the State Court did not end there. As a result, on February 15, 2013, the State Court enjoined Debtor "from filing any further motions, applications, papers, or other requests for relief in this disposed action without leave of this Court, and the Clerk is directed not to accept any additional filings by Campora in this action absent the granting of such relief." [dkt item 56] The State Court went on to state, "[n]otably, there is no prior Order or judgment of any court of record or of competent jurisdiction recognized by New York's Constitution or statutes that would serve as a predicate for contempt." [dkt item 56] As evidenced by his conduct in this case, Debtor was undeterred by these warnings from the State Court.

## <u>Legal Analysis</u>

### *The Court's Inherent Authority to Sanction*

As the United States Supreme Court has recognized, "[c]ourts independently must be vested with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and to preserve themselves and their officers from the approach and insults of pollution." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (internal quotation marks omitted). "Federal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients." *MA Salazar, Inc. v. Inc. Vill. of Atl. Beach*, 499 B.R. 268, 274 (E.D.N.Y. 2013) (quoting *In re Plumeri*, 434 B.R. 315, 327-328 (S.D.N.Y. 2010)); *see In re Negosh*, 2007 U.S. Dist. LEXIS 61842, at *23 (E.D.N.Y. Aug. 22, 2007). Under its inherent powers to supervise and control its own proceedings, a bankruptcy court "may impose sanctions where: 1) the challenged claim was

without a colorable basis and 2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *In re Lerner*, 515 B.R. 26, 34 (Bankr. E.D.N.Y. 2014) (quoting *Dahiya v. Kramer*, 2014 U.S. Dist. Lexis 41425 at *12 (E.D.N.Y. Mar. 27, 2014)); *see Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (discussing courts inherent authority to sanction where there is clear evidence that the conduct at issue is (1) entirely without color of law and (2) motivated by improper purposes); *MA Salazar, Inc.*, 499 B.R. at 274 (same); *Desiderio v. Parikh*, 508 B.R. 572, 596-597 (Bankr. E.D.N.Y 2014) (bankruptcy courts possess the "inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons"). A claim may be characterized as "without a colorable basis" when it is devoid of legal or factual support. *Schlaifer Nance & Co., v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999). Courts may infer that a claim was brought in bad faith if it is "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose such as delay." *Lerner*, 515 B.R. at 34 (quoting *MA Salazar, Inc.*, 499 B.R. at 274).

Bankruptcy courts also have the authority to impose sanctions under § 105(a), "but only against bad-faith conduct and only when it is tied to a specific provision of the Bankruptcy Code, rather than to further the purposes of the Code generally…and not merely [tied] to a general bankruptcy concept or objective." *Parikh*, 508 B.R. at 596 (quoting *In re Smart World Technologies, LLC*, 423 F.4d 166, 184 (2d Cir. 2005)); *see also U.S. Bank N.A. v. Perlmutter (In re South Side House, LLC)*, 470 B.R. 659, 684 (Bankr. E.D.N.Y. 2012) (bankruptcy courts have the power under § 105(a) "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")

In attempting to retain the protections of the bankruptcy stay and the bankruptcy process itself, Debtor represented to this Court, both through his sworn affidavit in the Notice and on the record of the May 8 Hearing, that the State Court had entered a judgment in his favor voiding the Foreclosure Judgment. At no time did he state or imply that the "judgment" in his favor was entered by the "People's Court" or with he himself acting as plaintiff and judge. As detailed above, Debtor also purposefully constructed the papers he submitted to this Court to make them look like valid Orders of the State Court; had his intent truly been to portray them as being issued by the court he created, he would have used a "People's Court" or other caption, not the caption of the State Court. Debtor cannot claim surprise that it is improper to manufacture his own court and his own orders, as he has previously been warned in the strongest terms by the State Court that this type of conduct is impermissible, if not contemptuous. Debtor's conduct before this Court was entirely without color of law and clearly motivated by improper purposes. His goal was to mislead this Court into keeping this bankruptcy case open, so that he could continue to obtain the protections of the automatic stay and continue his litigation against HSBC under the shelter of the stay. Whether individually for his misrepresentations and abuse of the bankruptcy process, or in tandem with his disrespectful conduct before this Court and disregard for the judicial process at the May 8 and Show Cause hearings, Debtor should be sanctioned under §105(a) and under this Court's inherent powers to supervise and control its own proceedings. The question, then, is the proper type and amount of sanctions.

### Sanctions

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 97 (2d Cir. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132 (1991)). Sanctions issued

pursuant to a court's inherent authority may be directed toward deterring the offending conduct. *Kramer v. Mahia (In re Khan)*, 488 B.R. 515, 535-536 (Bankr. E.D.N.Y. 2013) *aff'd* 2014 U.S. Dist. Lexis 41425; *see generally*, *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d. Cir. 1986) ("the underlying purpose of sanctions [is] to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations").  Although not required to do so, courts may consider an offending party's ability to pay when imposing sanctions.  *See Oliveri*, 803 F.2d at 1281 (although noting that the issue was moot, the Second Circuit stated that a reduction of a sanction award of $51,112.50 in attorney's fees to $5,000 based on the party's ability to pay was well within the discretion of the court); *Dahiya*, 2014 U.S. Dist. LEXIS 41425 at *25-26 (affirming bankruptcy court's reduced sanctions' award of $15,000).

Here, this Court has determined that a proper sanction for Debtor's conduct in attempting to mislead the Court and for his repeated lack of respect for the Court and the bankruptcy process is an economic sanction of Ten Thousand Dollars ($10,000), to be paid to the Clerk of Court of the United States Bankruptcy Court for the Eastern District of New York within ninety (90) days. Debtor's Schedules indicate that his monthly income is $6,270 and that, at a minimum, he has net monthly income of more than $5,000 per month.  [dkt item 19]  Thus, by Debtor's own representations of his monthly income, he has the financial ability to pay a sanction of $10,000, which is less than two months of his income.  Debtor is not paying his mortgage obligations, and clearly has no intention of doing so.

Another proper purpose of sanctions is to make the moving party whole by awarding attorney's fees and other costs incurred as a result of the actor's sanctionable conduct.  *Khan*, at 535-536; *see Grand St. Realty, LLC v. McCord*, 2005 LEXIS 45314, at *15, 22 (E.D.N.Y. Sept.

30, 2005).  Any award for attorney's fees must be directly attributable to and incurred in defending the sanctionable conduct.  *Khan*, at 536; *In re Green*, 422 B.R. 469, 477 (Bankr. S.D.N.Y. 2010).  This Court will also employ this sanction here.  At the conclusion of the Show Cause Hearing, this Court allowed HSBC's counsel to file a fee statement within fourteen (14) days, and allowed Debtor fourteen (14) days to respond.  Having reviewed the HSBC submission, and Debtor's response, this Court concludes that a reasonable attorney's fee for HSBC to remedy Debtor's conduct in causing unnecessary expenses to be incurred is $3,635.50, which is less than the amount requested, and represents an average billing rate of $191.32. Attached to this Order is an Appendix which details the specific tasks for which attorney's fees have been awarded, as well as the total numbers of hours and hourly rate, all of which are found to be reasonable and necessary fees incurred as a direct result of Debtor's improper litigious conduct.  This sanction must also be paid within ninety (90) days to counsel for HSBC.  Again, based upon his own representations of him income, Debtor has the financial wherewithal to pay this sanction.

### *Striking Debtor's Scandalous Pleading*

In addition, this Court on its own initiative has the authority to strike pleadings containing scandalous matters.  *See* FED. R. CIV. P. 12(f)[9]; 11 U.S.C. § 107(b)(2); FED. R. BANKR. P. 9018.  The decision to strike a pleading is vested in the sound discretion of the Court. *EEOC v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004); *In re L.K.*, 2009 Bankr. LEXIS 1861, at *2 (Bankr. E.D.N.Y. July 6, 2009).

Scandalous matters under Rule 12 are those that "reflect unnecessarily" on a party's moral character, or that contain "repulsive language that detract from the dignity of the court".

---

[9] In the OSC, the Court placed Debtor on notice that Rule 12 was applicable to this contested matter.  *see* Fed R. Bankr. P. 9014(c).

*Lynch v. Southampton Animal Shelter Foundation, Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011).

Generally, a court should not strike a pleading under Rule 12, "unless it is clear that the

allegations in question can have no possible bearing on the subject matter of the allegation."

*Olivieri v. Waldbaum, Inc.*, 2013 U.S. Dist. LEXIS 144075, at *24 (E.D.N.Y. Sept. 30, 2013)

(quoting, *Lynch* 278 F.R.D. at 63).

As noted by Chief Judge Craig in *Starbrite Properties Corp.*, courts look to various

sources in determining what constitutes a "scandalous" matter in the context of § 107(b)(2), as

the term "scandalous" is not defined in the statute.  2012 Bankr. LEXIS 2599, at *19-20 (Bankr.

E.D.N.Y. June 5, 2012) (citing *Father M. v. Various Tort Claimants (In re Roman Catholic

Archbishop of Portland in Or.,)*. 661 F.3d 417, 432 (9th Cir. 2011) (looking to the dictionary

definition of "scandalous" and common usage in defining scandalous matters as those that are

"disgraceful, offensive, shameful and the like.") and *In re Food Mgmt. Group, LLC*, 359 B.R.

543, 554 (Bankr. S.D.N.Y. 2007) (looking to the Black's Law Dictionary, which describes a

"scandalous" allegation as a "matter that is both grossly disgraceful (or defamatory) and

irrelevant to the action or defense.")).  In determining whether to strike "scandalous" matters

under § 107(b)(2), bankruptcy courts in this circuit have also looked to whether the offending

material is relevant, consistent with Rule 12(f), and whether it was brought for an improper

purpose.  *Food Mgmt. Group*, 359 B.R. at 558-559.

Here, under either Rule 12(f) or § 107(b) the Notice unquestionably contains scandalous

allegations as against Judges of the State Court, some of which are excerpted herein, and which

have no bearing on Debtor's Claim Objection and the prosecution of his case.  Debtor has no

apparent basis to have made such allegations, other than based on his displeasure at having lost

in the underlying litigations.  Therefore, the Notice shall be stricken from this Court's docket.

*Debtor's HSBC Claim Objection*

"After the commencement of a bankruptcy case, a debtor's creditors are entitled to file a proof of claim documenting their right to receive payment from the debtor's estate." *In re Taranto*, 2012 Bankr. LEXIS 1320, at *17 (Bankr. E.D.N.Y. Mar. 27, 2012) (internal citations omitted); *see Travelers Cas. & Sur. Co of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450. 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007).  Once a proof of claim has been filed under 11 U.S.C. § 501, it "is deemed allowed, unless a party in interest objects."  11 U.S.C. § 502(a).  A proof of claim that complies with the provisions of Bankruptcy Rule 3001(f) constitutes *prima facie* evidence of the validity of the claim.  FED. R. BANKR. P. 3001(f).  The objecting party, in this instance Debtor, bears the burden of setting forth sufficient evidence to rebut the presumption of validity; however, the ultimate burden of proof, always lies with the claimant. *Taranto*, 2012 Bankr. LEXIS 1320, at *18.

Debtor, as the objector, must produce "evidence equal in force to the *prima facie* case which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* at *24 (quoting *In re Oneida, Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, 2010 U.S. Dist. LEXIS 6500, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (internal citation and quotation marks omitted)).

Section 502(b) of the Bankruptcy Code provides nine grounds upon which a claim filed under § 501 may be disallowed.  Debtor did not specify which ground, but he appears to be proceeding under § 502(b)(1), under which this Court may disallow any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  § 502(b)(1).

As to the HSBC Claim, Debtor has failed to come forward with a scintilla of evidence to meet his burden to rebut the *prima facie* validity of the claim. The HSBC Claim has been adjudicated in favor of HSBC by the State Court by, *inter alia*, entry of the Foreclosure Judgment, and Debtor's collateral attack on the Foreclosure Judgment has been repudiated by the State Court in the strongest terms. Thus, Debtor's Objection to the HSBC Claim is overruled. As this Court previously noted in its Show Cause Order, it is not reaching Debtor's objection to the BOA Claim.

***Dismissal of Debtor's Bankruptcy Case***

In addition, based on the conduct outlined above and for the reasons more fully stated on the record of the Show Cause Hearing, the Court has determined that cause exists to dismiss Debtor's case under § 1307(c), and to prejudicially dismiss Debtor's case for a period of one (1) year. 11 U.S.C. §§ 105(a), 349(a), 1307(c); *see In re Montalvo*, 416 B.R. 381, 388-389 (Bankr. E.D.N.Y. 2009) ("[t]his Court has the authority to dismiss Debtor's bankruptcy case with prejudice to refiling"); *see generally In re Ventura*, 375 B.R. 103 (Bankr. E.D.N.Y. 2007) (discussing the court's authority to and under what circumstances it should exercise its authority to prejudicially dismiss a case). Debtor filed this case in bad faith and has been prosecuting this case in bad faith. His pleadings and conduct make clear that he has had no intention to act as an honest, but unfortunate, debtor for whom this Court's doors are always open.

***Summary of relief***

Based on the foregoing, it is hereby:

**ORDERED**, that this Court hereby sanctions Debtor **Ten Thousand Dollars ($10,000)** for raising claims without color of law and acting in bad faith, and/or for acting in bad faith vexatiously, wantonly, or for oppressive reasons, in making intentionally false representations to

the Court, attempting to mislead this Court, and for his blatant disrespect for the Court and the judicial process; such sanction shall be paid within **ninety (90) days of entry of this Order** to the Clerk of Court of the United States Bankruptcy Court for the Eastern District of New York; and it is further

**ORDERED**, that this Court hereby sanctions Debtor the additional amount of **$3,635.00** for HSBC's reasonable attorney's fees incurred as the result of Debtor's bad faith and vexatious conduct; such sanction shall be paid within **ninety (90) days of entry of this Order** to HSBC's counsel of record; and it is further

**ORDERED**, that this Court hereby strikes Debtor's Notice; and it is further

**ORDERED**, that Debtor's Claim Objection to the HSBC Claim is overruled; and it is further

**ORDERED**, that this Court hereby dismisses this bankruptcy case with prejudice to refilling under any chapter for a period of **one (1) year** for cause, in accordance with 11 U.S.C. §§ 105(a), 349 and 1307(c); the Clerk of the Court is directed not to close this case until Debtor has paid his sanctions, or as otherwise Ordered; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Order upon Debtor, the Chapter 13 Trustee, HSBC, BOA, and the Office of the United States Trustee.



**Dated: October 6, 2014**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**